TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00358-CV






Brian Charles Smith; Robert Hammond; David Talton; and John Collins,

Individually, and on Behalf of All Others Similarly Situated, Appellants


v.


Greg Abbott, in his Official Capacity as Attorney General of the State of Texas;

Cathleen Parsley, in her Official Capacity as Chief Administrative Law Judge,

State Office of Administrative Hearings; and Alicia Key, in her Official Capacity

as Director, Title IV-D Agency, Office of the Attorney General, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-04-002159, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





O P I N I O N


 Brian Charles Smith, Robert Hammond, David Talton, and John Collins
(collectively, appellants) appeal a district court judgment dismissing, for lack of subject-matter
jurisdiction, individual and putative class claims they asserted against the Attorney General,
the Chief Administrative Law Judge of the State Office of Administrative Hearings (SOAH), and
the Director of the Attorney General's Child Support Division (the "Division"), all in their
official capacities. (1) Appellants also complain of a district court order, merged into the judgment,
disqualifying their counsel. Appellants have not obtained replacement counsel, and appear pro se
in this appeal.

 We will affirm the disqualification order. However, we conclude that appellants have
demonstrated that the district court erred in dismissing several of their claims for want of subject-matter jurisdiction. Furthermore, while the court properly dismissed other claims, it erred in doing
so "with prejudice."


BACKGROUND

 This appeal concerns the authority that chapter 232 of the family code delegates to 
the Attorney General and the Division to administratively suspend state licenses as a means
of enforcing child support obligations. See generally Tex. Fam. Code Ann. §§ 232.001-.016
(West 2008). The legislature has designated the Office of the Attorney General as Texas's "Title IV
agency" and charged it with providing the child support enforcement functions and services required
by Title IV-D of the federal Social Security Act. See Tex. Fam. Code Ann. § 231.001 (West 2008);
see generally id. §§ 231.002-.309 (West 2008); 42 U.S.C.A. § 651 (West 2003). Within the
Attorney General's office, these duties are handled by the Division. See Tex. Fam. Code Ann.
§ 231.0012 (requiring that "[t]he person appointed by the attorney general as the person responsible
for managing the Title IV-D agency's child support enforcement duties shall report directly to the
attorney general"). Among other powers, the "Title IV-D agency" (i.e., the Division) may issue an
order under chapter 232 suspending a state license held by a child support obligor if it is determined
that the obligor (1) owes overdue child support in an amount equal to or greater than the total support
due for three months under a support order, (2) has been provided an opportunity to make payments
toward the overdue child support under a repayment schedule, and (3) has failed to comply with
the repayment schedule. Id. § 232.003(a). A proceeding to obtain such an order--which may be
initiated by the "Title IV-D Agency" itself--is governed by the contested-case provisions of the
Administrative Procedures Act, excluding the APA's provisions governing license revocations. See
id. § 232.004(d); Tex. Gov't Code Ann. § 2001.054 (West 2008). Chapter 232 further provides
that "[t]he director of the Title IV-D agency or the director's designee may render a final decision
in a contested case proceeding under this chapter." Tex. Fam. Code Ann. § 232.004(d). "An order
issued by a Title IV-D agency under this chapter is a final agency decision and is subject to review
under the substantial evidence rule" of the APA. Id. § 232.010.

 During the period relevant to this case, the Attorney General by rule had
designated "an administrative law judge designated by the Office of the Administrative Law Judge,
Child Support Division," to both preside at the contested-case hearings in Title IV-D license-revocation proceedings and to issue the final orders. 20 Tex. Reg. 5555 (1995) (codified at 1 Tex.
Admin. Code § 55.208(a)); 25 Tex. Reg. 3232 (2000). (2) However, it is undisputed that, in
January 2004, the Attorney General entered into an interagency contract with SOAH whereby the
Division would refer Title IV-D license-revocation proceedings to SOAH, whose ALJs would then
conduct the contested-case hearings in the proceedings and issue the final orders. The contract itself
is not in our record.

 In April 2004, under color of family code chapter 232 and SOAH's interagency
contract with the Attorney General, a SOAH ALJ conducted a contested-case hearing and issued
a final order suspending Smith's driver's license for non-payment of child support. Smith timely
filed a motion for rehearing with SOAH and, after it was denied, timely filed suit for judicial review
of the suspension order under the APA. See Tex. Gov't Code Ann. § 2001.174 (West 2008). With
his APA judicial review claim, Smith also asserted claims for relief under the Uniform Declaratory
Judgments Act (UDJA). See Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). 
Named as defendants were the Attorney General, the Director of the Division, and SOAH's
chief ALJ, all in their official capacities (collectively, appellees). Smith's principal allegation was
that his license-suspension order was void or invalid because SOAH had lacked statutory authority
either to conduct the contested-case hearing or to issue the final order because that authority
lay solely in the Division. Smith also alleged that appellees had failed to take account of a
2002 statutory change in calculating the interest on his child-support arrearages. Subsequently,
Hammond, Talton, and Collins joined the suit as plaintiffs and asserted similar complaints regarding
license-suspension orders (3) issued by SOAH ALJs. (4) In addition to asserting their claims individually,
appellants purported to represent a putative class of persons "whose license privileges have
been interfered with or otherwise impaired by the application or threatened application of this
illegal process." Appellants requested that the district court vacate the suspension orders, enjoin the
Division from transferring--and SOAH from hearing--Title IV-D license-suspension proceedings,
and declare that SOAH has and is exceeding its authority in conducting contested-case hearings and
in issuing final orders in those proceedings. Appellants also sought attorney's fees under the UDJA. 
Finally, appellants requested an order that the Division "recalculate the arrearage due on their child
support obligations" in a manner consistent with statutory interest provisions.

 The Attorney General and the Director filed a plea to the jurisdiction attacking
appellants' pleadings. They argued that appellants' claims, as pled, were barred by sovereign
immunity. Following a hearing at which only argument was presented, the district court denied
the plea. (5)

 Thereafter, the Attorney General and the Director filed a motion to disqualify
appellants' counsel, Samuel T. Jackson. Until April 2004, when he left to begin a private practice,
Jackson had served as an ALJ in the Division who conducted Title IV-D license-suspension
proceedings. The motion alleged that, before departing the Division, Jackson had obtained a copy
of a "confidential" internal Division database containing names and contact information concerning
respondents in Title IV-D license-suspension proceedings pending in the Division. The motion
further alleged that Jackson had utilized this "confidential information" in soliciting business
from license-suspension respondents and had obtained each of the plaintiffs as clients in this way.
The motion invoked the general requirement that lawyers decline representation when
the representation will result in the lawyer violating other disciplinary rules or "other law," see
Tex. Disc. R. Prof. C. 1.15, and three specific grounds: Jackson's conduct violated rules 1.10(c)
and 7.03 of the Texas Disciplinary Rules of Professional Conduct, as well as a separation agreement
Jackson signed before he departed the Attorney General's office. See id. R. 1.10(c), 7.03. An
evidentiary hearing was held in which Jackson admitted having obtained each appellant as a client
through his use of the database, but disputed whether the information was confidential and whether
his conduct violated any of the legal standards the movants had accused him of violating.

 The district court (6) granted the motion, disqualified Jackson from serving as counsel
in the case, and entered findings of fact and conclusions of law. Appellants (with Jackson still
representing them) thereafter sought mandamus relief from this Court. We concluded that appellants
did not establish their entitlement to relief. (7) Appellants then unsuccessfully sought mandamus relief
in the supreme court, (8) then unsuccessfully sought rehearing of the supreme court's order. (9) 

 After the supreme court overruled appellants' motion for rehearing, appellees filed
a first supplemental plea to the jurisdiction asserting that the district court lacked subject-matter
jurisdiction over Hammond, Talton, and Collins's claims because each had failed to satisfy statutory
prerequisites to a suit for judicial review under the APA. (10) Appellees presented proof that Talton
had filed an untimely motion for rehearing of his license-suspension order and that Collins had never
filed one at all. Appellees also showed that, after their motions for rehearing were overruled by
SOAH, Talton and Hammond failed to timely file their suit for judicial review. The district court (11)
granted the plea and issued an order dismissing the claims of Hammond, Talton, and Collins
"with prejudice."

 Subsequently, appellants, with Jackson still purporting to represent them, filed in
the district court a "Motion to Reinstate Counsel or to Clarify" the disqualification order, which
was denied. (12) Appellees then filed a second supplemental plea to the jurisdiction seeking dismissal
of Smith's claims on grounds of mootness. (13) Appellees presented evidence that the Division had
obtained an order from SOAH staying the April 2004 order suspending Smith's driver's license on
grounds that Smith had agreed to a schedule for repaying his child-support arrearages. Appellees
reasoned that, because this order had the effect of returning Smith's driver's license to him,
he no longer had a justiciable interest in the case. The district court granted the motion and
dismissed Smith's claims "with prejudice." (14) As this order disposed of the last remaining claims in
the case, it resulted in a final, appealable judgment. See Lehmann v. Har-Con Corp., 39 S.W.3d
191 (Tex. 2001).

 Thereafter, appellants, again with Jackson purporting to represent them, sought
mandamus in this Court from the district court's order denying their "Motion to Reinstate Counsel
or to Clarify Order," as well as an emergency stay of the disqualification. We again concluded that
appellants had not shown their entitlement to relief. (15) Jackson proceeded to file a "Joint Notice of
Appeal" on appellants' behalf as well as on his own. The Attorney General responded with a motion
to dismiss the appeal based on Jackson's disqualification. This Court ordered Jackson to appear for
a show cause hearing. He appeared and filed a written response to the dismissal motion. In a nine-page per curiam order, we rejected Jackson's contentions, held that he did not have standing to
participate in the appeal on his own behalf, and further held that, unless and until his disqualification
order was overturned, he could not represent appellants. (16) However, in the interest of justice, we did
not dismiss the appeal outright, but permitted appellants fifteen days in which to decide whether they
wished to proceed by filing an amended notice of appeal to reflect that Jackson was not a party and
was not representing them any longer. (17) Appellants, pro se, timely filed an amended notice of appeal
indicating they were challenging both the dismissal of their claims and the disqualification order. 



ANALYSIS

 Appellants bring six issues on appeal. Two issues concern the dismissals, and the
rest address the disqualification order.


Disqualification of counsel

 In their fifth issue, appellants urge us to revisit our previous holding that Jackson
is not entitled to participate in this appeal either in his own behalf or (unless and until we reverse
the disqualification order) as counsel for appellants. In their third issue, appellants complain that
the district court failed to make "specific findings" "articulating a compelling reason for the
disqualification and demonstrating that disqualification was the least restrictive means of guarding
against an irreparable and imminent injury," which, they contend, are required by the "First and
Fourteenth Amendments and Texas's free speech, due course of law, and open courts provisions." 
In their fourth issue, appellants argue that the district court erred in disqualifying their counsel
under rule 1.10(c). Finally, in their sixth issue, appellants urge that, even if Jackson was properly
disqualified from representing them in proceedings adverse to the Attorney General and the
Division, these grounds do not support disqualifying him from representing them in their claims
against SOAH's chief ALJ.

 Appellees' sole response to these arguments is to assert that the disqualification order
is "void," and "should be vacated," because the district court properly held that it lacked subject-matter jurisdiction over appellants' claims. We reject appellees' premise that they can invoke
the district court's subject-matter jurisdiction to obtain an order disqualifying their opponents'
counsel of choice, then effectively insulate the disqualification order from appellate review by
arguing that their unrepresented opponents could not establish the district court's subject-matter
jurisdiction. Moreover, as we explain below, the disqualification order is not "void," even under
appellees' theory, because we ultimately conclude that the district court possessed subject-matter
jurisdiction over several of appellants' claims. Consequently, we must evaluate--without briefing
from appellees--whether appellants have shown reversible error in the disqualification order.

 This Court has thoroughly addressed appellants' fifth issue in its opinion following
the show-cause hearing, and we continue to adhere to that analysis. (18) We overrule appellants'
fifth issue.

 As for appellants' third issue, it is, in substance, a complaint that the district court
failed to file additional or amended findings of fact and conclusions of law. See Tex. R. Civ. P. 298. 
Rule 298 provides that, after a trial court files original findings of fact and conclusions of law, "any
party may file with the clerk of the court a request for specified additional or amended findings or
conclusions . . . within ten days after the filing of the original findings and conclusions by the court." 
Id. The district court filed its original findings and conclusions on April 19, 2005. Appellants did
not file a request for additional or amended findings and conclusions within the required ten-day
time period. (19) Appellants have not preserved this complaint. See Tex. R. App. P. 33.1(a). We
overrule appellants' third issue.

 Appellants' fourth issue challenges the merits of the disqualification order. (20) Attorney
disqualification "is a severe remedy," having the potential to cause "immediate harm by depriving
a party of its chosen counsel and disrupting court proceedings." In re Sanders, 153 S.W.3d 54, 57
(Tex. 2004) (quoting Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex. 1990)
and citing In re Nitla S.A. De C.V., 92 S.W.3d 419 (Tex. 2002)). Thus, the movant on a motion to
disqualify bears a high burden, and must establish with specificity the basis for disqualification.
Spears, 797 S.W.2d at 656. To meet this burden, "mere allegations of unethical conduct or evidence
showing a remote possibility of a violation of the disciplinary rules will not suffice." Id. While the
Texas Disciplinary Rules of Professional Conduct are not binding in such matters, courts often look
to them as guidelines in determining whether attorney conduct warrants disqualification. Henderson
v. Floyd, 891 S.W.2d 252, 253 (Tex. 1995); Spears, 797 S.W.2d at 656. However, "[e]ven if a
lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the
opposing lawyer's conduct caused actual prejudice that requires disqualification." In re Nitla S.A.
De C.V., 92 S.W.3d at 422. We review the district court's disqualification ruling for abuse of
discretion. See Metropolitan Life Ins. Co. v. Syntek Fin. Corp., 881 S.W.2d 319, 321 (Tex. 1994).

 Here, as noted, the Attorney General and the Division asserted three specific grounds
for disqualification: that Jackson violated rules 1.10(c) and 7.03 of the Texas Disciplinary Rules of
Professional Conduct, and that he also violated a separation agreement he had signed before leaving
the Attorney General's Office. Appellants requested, and the district court filed, findings of fact and
conclusions of law detailing the bases for disqualification. The findings of fact that are relevant to
our analysis are as follows:


FOF 1: Plaintiffs' lawyer, Samuel T. Jackson ("Jackson"), is a former OAG
employee. He left his governmental post in April 2004. Jackson
worked for the OAG, first as the Director of the Child Support
Litigation Division (1991), and subsequently as an Administrative
Law Judge, Child Support Division (1996-2004).


FOF 2: Upon separation from his governmental post, Jackson entered into an
agreement with the OAG. The agreement contained the following
affirmations: 1) I will decline representation in any license suspension
or any other case prior to my official separation date of April 30,
2004, in which the Office of the Attorney General is a party; 2) I will
decline representation in any license suspension case which was set
on my docket while employed as an Administrative Law Judge for the
Child Support Division; 3) I will decline representation in any license
suspension cases in which I was knowingly[,] substantially[,] and
personally involved, or in which I acquired confidential client
information while an employee of the Office of Attorney General; and
4) In the event that I should unwarily accept representation on a case
prohibited by this paragraph, I will immediately withdraw from such
case as soon as it is brought to my attention. The agreement cited the
disciplinary rules for private practice after government employment.


FOF 3: The OAG maintains a proprietary confidential License Suspension
Database. It was created and is maintained for the Office of the
Attorney General, Child Support Division.


FOF 4: Jackson knew or should have known that the License Suspension
Database is proprietary and confidential.


FOF 5: Jackson, when he left the employ of the OAG, took a copy of the
OAG's proprietary confidential License Suspension Database.


* * *


FOF 7: Jackson represents Brian Charles Smith, Robert Hammond, David
Talton, and John Collins in this lawsuit against the OAG.


FOF 8: Jackson obtained Smith's, Hammond's, Talton's and Collin's
information from the proprietary confidential License Suspension
Database.


FOF 9: But for the use of the proprietary confidential License Suspension
Database, Jackson would not have been able to solicit the plaintiffs
as clients.


FOF 10: Smith's, Hammond's, Talton's and Collin's interest in this lawsuit
are adverse to those of the OAG.


FOF 11: Jackson violated the Texas Rules of Professional Conduct.


FOF 12: Jackson's conduct causes actual prejudice to the OAG and requires
disqualification.



The district court also made the following relevant conclusions of law: 



COL 1: Rule 1.15 of the Texas Rules of Professional Conduct requires a
lawyer to withdraw from representation of a client "if . . . the
representation will result in violation of other applicable rules of
professional conduct or other law, . . . ."


COL 2: Rule 1.10(c) of the Texas Rules of Professional Conduct provides that
"a lawyer having information that the lawyer knows or should know
is confidential government information about a person or other legal
entity acquired when the lawyer was a public officer or employee may
not represent a private client whose interests are adverse to that person
or legal entity.


The district court also made a finding that Jackson had made an unsuccessful, unsolicited
telephone solicitation offering his services to an individual whose contact information Jackson had
obtained from the database, as well as a corresponding conclusion of law quoting the language of
rule 7.03. See Tex. Disc. R. Prof. C. 7.03 ("A lawyer shall not by . . . telephone . . . seek professional
employment . . . from a prospective client or nonclient who has not sought the lawyer's advice
regarding employment or with whom the lawyer has no family or past or present attorney-client
relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain"). 
However, because the district court made no finding as to how Jackson's unsuccessful telephone
solicitation had caused actual prejudice to the movants, Jackson's disqualification must rest upon
violations of the other legal standards that the movants alleged.

 Appellants do not dispute the district court's findings regarding Jackson's
employment history with the Division, that Jackson took with him a copy of a password-protected
internal Division database used to track Title IV-D license-suspension cases that he had obtained
while working in the Division, or that Jackson subsequently used information from this database in
successfully soliciting appellants as clients. (21) They challenge only whether these findings establish
that Jackson violated rule 1.10(c). Appellants first question whether the findings establish that the
database information was "confidential government information" under the meaning of rule 1.10(c). 
"Confidential government information," as used in rule 1.10(c), "means information which has
been obtained under governmental authority and which, at the time this rule is applied, the
government is [1] prohibited by law from disclosing to the public or has a legal privilege not to
disclose, and [2] which is not otherwise available to the public." Id. R. 1.10(g). In another case
involving Jackson, we recently held that information concerning Title IV-D license-suspension
proceedings maintained by the Attorney General's Office and SOAH is confidential by law. 
See Jackson v. State Office of Admin. Hearings, No. 03-07-00293-CV, 2009 Tex. App. LEXIS __,
at ___ (Tex. App.--Austin July 30, 2009, no pet. h.) (mem. op.). Consequently, the district court's
fact findings establish that the database information satisfies the first prong of rule 1.10(c)'s
"confidential government information" definition.

 Appellants urge that, nonetheless, the movants failed to establish the second prong
of the definition--that the information was not otherwise available to the public. Moreover, even
assuming the movants met that burden, appellants question how Jackson's use of information from
the database about them in contacting them to offer his services on their behalf, as the district court
found Jackson did, could run afoul of rule 1.10(c)'s prohibition against lawyers who acquire
"confidential government information about a person or other legal entity" subsequently
"represent[ing] a private client whose interests are adverse to that person or legal entity." Id.
R. 1.10(c). Appellants' argument finds support in an American Bar Association advisory opinion
concerning ABA Model Rule 1.11(b), on which rule 1.10(c) was modeled. See ABA Comm. on
Ethics and Prof'l Responsibility, Formal Op. 97-409 (1997), at 468 n.7 ("The term 'person' in
Rule 1.11(b) does not include the former government client, but refers only to third parties whom
the former government lawyer may oppose on behalf of a private party after leaving government
service"), 470 ("Rule 1.11(b) comes into play only if the lawyer acquired 'confidential government
information' about an adverse third party while in government service, and offers no protection
to the former government client respecting its confidences"). We also observe that rule 1.10(c)
presumes an attorney-client relationship between the lawyer and the former governmental client,
whereas Jackson, as an ALJ, would be considered an "adjudicatory official" under the rules. See
Tex. Disciplinary R. Prof'l Conduct Terminology, reprinted in Tex. Gov't Code Ann., tit. 2,
subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9) (defining "adjudicatory official" and
"tribunal"), 1.11 (conflict-of-interest restrictions applicable to "adjudicatory officials").

 Even if the district court's findings do not support Jackson's disqualification under
rule 1.10(c), they do establish a violation of Jackson's separation agreement that can support
disqualification. The district court found that Jackson agreed that, among other terms, he would
"decline representation in all license suspension cases . . . in which [he] acquired confidential client
information while an employee of the Office of the Attorney General." The district court's findings
establish that Jackson obtained confidential information about appellants from the database,
see Jackson, No. 03-07-00293-CV, 2009 Tex. App. LEXIS, at ___, and then proceeded to represent
appellants in their license-suspension cases despite the restriction. (22) That violation, together with
the district court's findings that this conduct caused actual prejudice to the movants by enabling
Jackson to sign up clients he otherwise could not have obtained to sue the Attorney General, supports
the disqualification order. See Tex. Disciplinary R. Prof'l Conduct 1.15 (requiring that lawyers
shall decline representation when the representation will result in lawyer violating "other law"). 
Accordingly, the district court did not abuse its discretion in disqualifying Jackson from representing
appellants in their suit against the Attorney General and the Division. We overrule appellants'
fourth issue.

 In their sixth issue, appellants urge that even if the district court properly
disqualified Jackson from representing them against the Attorney General and the Division,
the district court nonetheless abused its discretion in extending the disqualification to their
claims against SOAH's chief ALJ. Appellants emphasize that SOAH did not join in the original
disqualification motion. We conclude that the district court did not abuse its discretion. Regardless
of which appellee they are asserted against, appellants' claims ultimately challenge the authority of
the Attorney General and the Division to delegate certain of their statutory duties to SOAH. 
Consequently, Jackson's representation of appellants in pursuing those claims against SOAH's
chief ALJ would implicate the same grounds for disqualification as did their claims against the
Attorney General and the Division. We overrule appellants' sixth issue. 


Subject-matter jurisdiction

 In their first issue, appellants assert that the district court erred in dismissing Smith's
claims on grounds of mootness. In their second issue, appellants challenge the district court's
dismissal of Collins, Hammond, and Talton's claims.

 An assertion that a trial court lacks subject-matter jurisdiction over a claim
may be raised through a plea to the jurisdiction. See Texas Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 225-26 (Tex. 2004); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554
(Tex. 2000). The determination of whether the trial court has subject-matter jurisdiction begins with
the pleadings. See Miranda, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts
that affirmatively demonstrate the trial court's jurisdiction to hear the cause. Id. (citing Texas Ass'n
of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met
this burden is a question of law that we review de novo. Id. We construe the pleadings liberally and
look to the pleader's intent. Id. We also assume the truth of the jurisdictional facts alleged in
the pleadings unless the defendant presents evidence to negate their existence. Id. at 227 (citing
Blue, 34 S.W.3d at 555). In resolving the jurisdictional challenges presented by the plea, we may
also consider evidence that the pleader has attached to its petition or submitted in opposition to the
plea. See Blue, 34 S.W.3d at 555.

 If the pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction,
the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to
amend. See Miranda, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of
jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an
opportunity to amend. Id. at 227.


 Mootness

 In their first issue, appellants contend that appellees failed to demonstrate that
Smith's claims had been rendered moot after filing. Texas courts are prohibited from deciding
moot controversies. See Nat'l Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999). This
prohibition is rooted in separation-of-powers concepts and the prohibition against courts rendering
advisory opinions. See id. A case becomes moot if a controversy ceases to exist or the parties lack
a legally cognizable interest in the outcome. See Allstate Ins. Co. v. Hallman, 159 S.W.3d 640,
642 (Tex. 2005) (citing Texas Bd. of Adjustment v. Wende, 92 S.W.3d 424, 427 (Tex. 2002)). To
demonstrate that Smith no longer has a legally cognizable interest in the case outcome, appellees
relied on a January 2006 order that the Division had obtained from SOAH. The order states: 


 The Office of the Attorney General of Texas, Petitioner, filed a Motion to
Stay Order Suspending License on January 23, 2006, in the above styled case. 
Respondent, BRIAN CHARLES SMITH, has paid all delinquent child support, has
established a satisfactory payment record, or good cause otherwise exists to stay
the Decision and Order issued April 26, 2004, suspending Respondent's Driver's
license number [redacted] issued by the Texas Department of Public Safety. The
Administrative Law Judge concludes the motion should be granted.


 It is, therefore, ORDERED that the Motion to Stay Order Suspending
License is GRANTED, and the order suspending Respondent's license(s) is hereby
STAYED. The stay shall remain subject to a motion to revoke for noncompliance
in accordance with Tex. Fam. Code Ann. § 232.012. This order shall be promptly
delivered to the [sic] for observance. Upon payment of any fee required by the
licensing agency under Tex. Fam Code Ann. § 232.014, the agency shall issue the
affected license to BRIAN CHARLES SMITH if he is otherwise qualified for
the license.



See Tex. Fam. Code Ann. § 232.013 (authorizing "Title IV-D agency" to "render an order vacating
or staying an order suspending an individual's license" for "good cause" or if individual has paid all
delinquent child support or "established a satisfactory payment record"). Appellees also presented
a copy of the Division's motion, which reflected that Smith had entered into an agreed repayment
schedule. Appellees reason that because this order allowed the return of Smith's driver's license,
he no longer has a justiciable interest in any of his claims. We disagree.

 Smith challenges the April 2004 order revoking his driver's license primarily on 
grounds that SOAH had no authority either to issue that order or to conduct the contested-case
hearing that preceded the order. Smith seeks, among other relief, a judgment vacating this order
and declarations that SOAH had no authority to issue it in the first place or to conduct the contested-case hearing that preceded it. The January 2006 order that the Division obtained, in contrast, does
not vacate or void the April 2004 order, but merely stays it. (23) In other words, the underlying
April 2004 order giving rise to Smith's controversy remains in effect--and can be enforced anew, as
the January 2006 order states, if a motion to revoke the stay is filed. See id. § 232.012. Furthermore,
the January 2006 order leaves Smith subject to administrative fees that can be imposed under family
code section 232.014 on "an individual who is the subject of an order suspending license." See id.
§ 232.012. For these reasons, the January 2006 order did not obviate Smith's legally cognizable
interest in his claims challenging the April 2004 order as beyond SOAH's authority, and they are
not moot. See Allstate Ins. Co., 159 S.W.3d at 642.

 However, the record demonstrates that Smith's claim challenging appellees'
calculation of interest on his child-support arrearages is moot. Smith's agreed repayment schedule,
which is attached to the Division's motion to stay the April 2004 license-suspension order, reflects
that Smith agreed he "owe[d] child support of $38,732.93, as of 01/16/2006," and that he would
repay this amount through a lump-sum payment and a series of monthly payments until the balance
was paid in full. There is no indication that Smith reserved any right to dispute the amount of
his obligation. Smith's unqualified agreement to pay this amount was a final settlement and
compromise of any dispute concerning the amount of his obligation at that time. See Miga v. Jensen,
96 S.W.3d 207, 211 (Tex. 2002). Further, Smith does not seek any prospective relief concerning
the calculation of interest on child-support arrearages, nor would he have standing to do so, as
the prospect that he will owe future child-support arrearages and that the Division will miscalculate
them is too remote, contingent, and speculative to give rise to a justiciable claim. See Williams
v. Lara, 52 S.W.3d 171, 183-85 (Tex. 2001).

 Consequently, the district court did not err in dismissing Smith's claim concerning
the calculation of interest he owes on his child-support arrearages. However, as appellants
point out--and appellees concede--the district court erred in dismissing this claim "with prejudice." 
See Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex. 1999) (dismissal for mootness). We will thus
modify this portion of the district court's judgment to reflect that Smith's claim concerning interest
on his child-support arrearages was dismissed without prejudice.


 Sovereign immunity

 In the district court, appellees asserted that sovereign immunity barred all of
appellants' claims. Absent a statutory right to judicial review of the license-suspension orders, a
suit challenging the orders is one to "control state action" and is barred by sovereign immunity, see
Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 198
(Tex. 2004); Scott v. Presidio I.S.D., 266 S.W.3d 531, 534 (Tex. App.--Austin 2008, pet. filed)
(op. on reh'g); Southwest Airlines Co. v. Texas High-Speed Rail Auth., 867 S.W.2d 154, 157
(Tex. App.--Austin 1993, no writ) (op. on reh'g), unless the orders were ultra vires of SOAH's
statutory authority or unconstitutional. See Texas Hwy. Comm'n v. Texas Ass'n of Steel Importers,
372 S.W.2d 525, 530 (Tex. 1963); Southwestern Bell Tel. Co. v. Public Util. Comm'n, 735 S.W.2d
663, 668 (Tex. App.--Austin 1987, no writ). (24) APA section 2001.171 provides a statutory right of
judicial review from administrative orders in contested-case proceedings, thereby waiving sovereign
immunity as to claims within its scope. Tex. Gov't Code Ann. § 2001.171; see Mega Child Care,
Inc., 145 S.W.3d at 173. Smith pled a claim under APA section 2001.171, and there is no dispute
that he complied with the statutory prerequisites for such a claim--he timely filed a motion for
rehearing and, after it was denied, timely filed his suit for judicial review. See Tex. Gov't Code Ann.
§§ 2001.146, .176 (West 2008). Consequently, sovereign immunity does not bar Smith from
prosecuting his live claims for the relief provided under that section. This relief may include reversal
of his license-suspension order on grounds that SOAH had no authority to issue it. See Tex. Gov't
Code Ann. § 2001.174(2) (court shall reverse agency order and remand for further proceedings if it
is "in violation of a constitutional or statutory provision," "in excess of the agency's statutory
authority," or "affected by other error of law").

 On the other hand, appellants do not dispute that Collins, Hammond, and Talton
failed to exhaust their administrative remedies and otherwise satisfy the statutory prerequisites
for bringing a suit for judicial review under APA section 2001.171. Accordingly, the district court
did not err in dismissing these claims--although, as with Smith's moot claim, its dismissal "with
prejudice" was error and must be modified. See Blue Cross Blue Shield v. Duenez, 201 S.W.3d 674,
675 (Tex. 2006) (dismissal for failure to exhaust administrative remedies).

 In their second issue, appellants complain that the district court erred in dismissing
Collins, Hammond, and Talton's UDJA claims on exhaustion grounds because these claims
allege acts ultra vires of appellees' statutory authority, such that administrative exhaustion is not
required. See Westheimer Indep. Sch. Dist. v. Brockette, 567 S.W.2d 780, 789 (Tex. 1978); see also
Southwestern Bell Tel. Co., 735 S.W.2d at 667 (observing that, "in the context of administrative
proceedings, the court's jurisdiction under Uniform Declaratory Judgments Act has derived from
its inherent power to hear and determine whether the agency action in controversy was ultra vires
or unconstitutional"). Appellees respond that these claims do not actually allege ultra vires conduct
and, thus, seek only to "control state action" by directing conduct within their statutory powers. 
While the parties join this issue only with respect to Collins, Hammond, and Talton's UDJA claims,
we observe that the same issue is presented by Smith's UDJA claims. (25)

 The UDJA is not a general waiver of sovereign immunity; it "does not enlarge a
trial court's jurisdiction, and litigant's request for declaratory relief does not alter a suit's underlying
nature." City of El Paso v. Heinrich, No. 06-0778, 284 S.W. 3d 366, , 2009 Tex. LEXIS 253,
at *6 (Tex. May 1, 2009). Consequently, sovereign immunity will bar an otherwise proper
UDJA claim that has the effect of establishing a right to relief against the State for which sovereign
immunity has not been waived. See City of Houston v. Williams, 216 S.W.3d 827, 828-29
(Tex. 2007) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by
characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment
claim," and "if the sole purpose of such a declaration [regarding a governmental body's statutory
authority] is to obtain a money judgment, immunity is not waived") (quoting Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 856 (Tex. 2002)); Koch v. Texas Gen. Land
Office, 273 S.W.3d 451, 455 (Tex. App.--Austin 2008, pet. filed) (citing, as examples, UDJA claims
that would establish State's contractual or tort liability). In the case of an ostensible ultra vires
claim, as the Texas Supreme Court recently explained, the plaintiff "must not complain of a
government officer's exercise of discretion, but rather must allege, and ultimately prove, that the
officer acted without legal authority or failed to perform a purely ministerial act." Heinrich, No. 06-0778, 284 S.W. 3d at ___, 2009 Tex. LEXIS, at *11. If the plaintiff, in fact, alleges or ultimately
can prove only acts within the officer's legal authority and discretion, the claim seeks "to control
state action," and is barred by sovereign immunity. See id. Appellees have challenged only whether
appellants' pleadings allege acts beyond their statutory authority. We evaluate this issue by
construing the relevant statutory or constitutional provisions defining appellees' authority and
determine whether appellants have alleged acts outside that authority. See Dir. of Dep't of Agric.
& Env't v. Printing Indus. Ass'n of Tex., 600 S.W.2d 264, 265-70 (Tex. 1980); Hendee v. Dewhurst,
228 S.W.3d 354, 368-69 (Tex. App.--Austin 2007, pet. denied).

 Appellants have argued that they alleged facts that, if taken as true, would constitute
conduct beyond appellees' statutory authority. They contend that, by pleading that SOAH rather
than the Division adjudicated their license-suspension proceedings, they have alleged conduct that
violates chapter 232 and the Attorney General's rules in effect at the time, which had designated "an
administrative law judge designated by the Office of the Administrative Law Judge, Child Support
Division," to both preside at the contested-case hearings and to issue final orders. 20 Tex. Reg. 5555
(codified at 1 Tex. Admin. Code § 55.208(a)); 25 Tex. Reg. 3232. (26) Appellants characterize
the Attorney General's delegation of these duties to SOAH as an improper rule amendment
without complying with the APA's requirements. Even if SOAH could conduct the hearings,
appellants further assert, it had no statutory authority to render a final order. Appellants emphasize
section 232.004(d) of the family code, which provides that "[t]he director of the Title IV-D agency
or the director's designee may render a final decision in a contested case proceeding under this
chapter." Tex. Fam. Code Ann. § 232.004(d). They also point to SOAH's statute, chapter 2003 of
the government code, which, they contend, does not authorize SOAH ALJs to render final orders in
Title IV-D license-suspension proceedings. See Tex. Gov't Code Ann. § 2003.046 (West 2008). 

 Appellees respond that the family code authorized the Attorney General and the
Division, to enter into contracts or agreements to effectuate their duties as Texas's "Title IV-D
agency." They rely upon section 231.002:


Sec. 231.002. POWERS AND DUTIES.


(a) The Title IV-D agency may:


. . . 


 (4) enter into contracts or agreements necessary to administer this chapter.


. . . 


(c) The Title IV-D agency may enter into agreements or contracts with federal,
state, or other public or private agencies or individuals for the purpose of
carrying out the agency's responsibilities under federal or state law. The
agreements or contracts between the agency and other state agencies or
political subdivisions of this or another state, including a consortia of
multiple states, and agreements or contracts with vendors for the delivery of
program services are not subject to Chapter 771[ (27)] or 783,[ (28)] Government
Code.



Tex. Fam. Code Ann. § 231.002. Appellants judicially admitted in their pleadings that the
Attorney General and SOAH entered into an interagency contract in January 2004 whereby
SOAH agreed to conduct all administrative Title IV-D child support hearings referred to it by
the Attorney General. (29) Appellees conclude that section 231.002 provided independent statutory
authority enabling the Attorney General and the Division to contractually transfer their authority to
decide Title IV-D license-suspension cases, and that is what happened here.

 Although appellees have demonstrated that the Attorney General and the
Division have statutory authority to make contracts to effectuate and administer the functions of
the "Title IV-D agency," this does not necessarily mean that SOAH had corresponding statutory
authority to perform those functions, any more than any other third party. The issue of SOAH's
authority to perform these functions is at the core of appellants' ultra vires claims.

 Regarding SOAH's authority to conduct Title IV-D contested-case hearings
for the Division, we observe that the legislature has authorized SOAH to "conduct, for a fee and
under a contract, administrative hearings or alternative dispute resolution procedures in matters
voluntarily referred to the office by a governmental entity." Tex. Gov't Code Ann. § 2003.021(b)(4)
(West 2008). The conduct that appellants allege falls within SOAH's authority under this provision. 
We thus agree with appellees that appellants have not stated a valid ultra vires claim with respect
to SOAH's conducting the contested-case hearing portions of appellants' license-suspension
proceedings. See Heinrich, No. 06-0778, 284 S.W. 3d at ___, 2009 Tex. LEXIS, at *11; McLane
Co. v. Strayhorn, 148 S.W.3d 644, 649 (Tex. App.--Austin 2004, pet. denied). However,
appellants' claims challenging the authority of SOAH ALJs to issue the final orders in those
proceedings present a closer question.

 Appellants emphasize section 2003.042 of the government code, which enumerates
the powers of SOAH ALJs:


Sec. 2003.042 POWERS OF ADMINISTRATIVE LAW JUDGE.


(a) An administrative law judge employed by the office or a temporary
administrative law judge may:


(1) administer an oath;


(2) take testimony;


(3) rule on a question of evidence;


(4) issue an order relating to discovery or another hearing or prehearing
matter, including an order imposing a sanction;


(5) issue an order that refers a case to an alternative dispute resolution
procedure, determines how the costs of the procedure will be apportioned,
and appoints an impartial third party as described by Section 2009.053 to
facilitate that procedure;


(6) issue a proposal for decision that includes findings of fact and
conclusions of law;


(7) if expressly authorized by a state agency rule adopted under Section
2001.058(f), make the final decision in a contested case;


(8) serve as an impartial third party as described by Section 2009.053 for a
dispute referred by an administrative law judge, unless one of the parties
objects to the appointment; and


(9) serve as an impartial third party as described by Section 2009.053 for a
dispute referred by a government agency under a contract.

(b) An administrative law judge may not serve as an impartial third party for a
dispute that the administrative law judge refers to an alternative dispute resolution
procedure.



Tex. Gov't Code Ann. § 2003.042 (West 2008) (emphasis added). Appellants point out that
subsection (a)(7) authorizes SOAH ALJs to "make the final decision in a contested case" only
when "expressly authorized by a state agency rule adopted under Section 2001.058(f)."
Section 2001.058(f) of the government code provides: "A state agency by rule may provide that, in
a contested case before the agency that concerns licensing in relation to an occupational license
and that is not disposed of by stipulation, agreed settlement, or consent order, the administrative
law judge shall render the final decision in the contested case." Id. § 2001.058(f).

 It is undisputed that, at the time relevant to these proceedings, the Attorney General
had not adopted rules providing that SOAH ALJs would issue the final orders in Title IV-D license-suspension cases, as government code sections 2003.042(a) and 2001.058(f) require. Moreover,
the driver's licenses at issue here are not occupational licenses. (30) Consequently, appellants have
alleged conduct by SOAH ALJs that falls outside their statutory authority under government code
sections 2003.042 and 2001.058. Appellees have not presented any other basis--legal or
evidentiary--for concluding that SOAH possesses statutory authority to issue final orders in the
Title IV-D license-suspension proceedings that are referred to it. Thus, on this record, we conclude
that appellants have stated a claim that SOAH has been acting ultra vires of its statutory authority
in issuing final orders in Title IV-D license-suspension proceedings. 

 Nevertheless, to determine whether appellants' UDJA claims are within the
district court's subject-matter jurisdiction, we must also consider the independent sovereign-immunity implications of appellees' interagency contract. That is, even if appellants have stated
an otherwise-valid ultra vires claim regarding SOAH's issuance of final orders in Title IV-D license-suspension proceedings, such a claim would nonetheless implicate sovereign immunity if the
effect of the remedy appellants seek would be to invalidate a previously executed state contract. See
Texas Logos, L.P. v. Texas Dep't of Transp., 241 S.W.3d 105, 119-21 (Tex. App.--Austin 2007,
no pet.) (citing IT-Davy, 74 S.W.3d at 856); see also Williams, 216 S.W.3d at 828-29. A
qualification to this principle is that sovereign immunity would not bar such a suit if the contract
was void--i.e., a legal nullity--and not merely voidable. See Texas Logos, L.P., 241 S.W.3d at 121
(citing Dallas Farm Mach. Co. v. Reaves, 307 S.W.2d 233 (Tex. 1957)). As appellees observe,
appellants' pleadings "have not challenged the legality of the contract or claimed that it is void in
any way." Consequently, appellants have not affirmatively demonstrated, through their present
pleadings, the district court's subject-matter jurisdiction over their UDJA claims. The district court
did not err in granting appellees' plea to the jurisdiction as to those claims.


CONCLUSION

 We have held the following:



 The district court did not abuse its discretion in disqualifying appellants'
counsel.


 


 The district court erred in dismissing Smith's suit for judicial review under
APA section 2001.171, with the exception of Smith's claim regarding interest
on his child-support arrearages, which is moot and was properly dismissed. 
 The district court did not err in dismissing Collins, Hammond, and Talton's
suit for judicial review under APA section 2001.171 because they failed to
comply with statutory prerequisites to suit under this provision. 


 


 The district court did not err in dismissing appellants' UDJA claims because
their pleadings do not affirmatively demonstrate the district court's subject-matter jurisdiction, i.e., that the claims are not barred by sovereign immunity.




 In light of these holdings, we affirm the district court's order disqualifying appellants'
counsel. However, we reverse the district court's judgment dismissing Smith's APA claims (except
for the moot interest-related claim), and remand those claims to the district court for further
proceedings. 

 As for the claims that were properly dismissed, appellants have requested that, if we
affirm the dismissal of any of their claims, they be afforded the opportunity to cure the jurisdictional
defects by repleading and, if not, that we at least modify the judgment to reflect that the dismissals
are without prejudice. Appellants are not entitled to leave to replead a claim unless it is possible
they could cure the jurisdictional defect that was the basis for dismissing the claim. See Texas A&M
Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839-40 (Tex. 2007). Repleading cannot possibly cure
the mootness of Smith's claim regarding interest on his child-support arrearages, nor can it cure
the other appellants' failures to satisfy the statutory prerequisites to their APA judicial review claims. 
We conclude the same as to appellants' UDJA claims concerning SOAH's authority to conduct
contested-case hearings in Title IV-D license-suspension cases. However, as noted, and as
conceded by appellees, the district court erred in dismissing the APA claims with prejudice. See
Duenez, 201 S.W.3d at 675 (dismissal for failure to exhaust administrative remedies); Ritchey,
986 S.W.2d at 612 (dismissal for mootness). Accordingly, we modify the district court's judgment
to dismiss these APA claims without prejudice and, as modified, affirm the dismissal of those claims
without leave to replead. See Koseoglu, 233 S.W.3d at 839-40; Duenez, 201 S.W.3d at 675; Ritchey,
986 S.W.2d at 612. 

 As for appellants' UDJA claims concerning SOAH's statutory authority to issue
final orders in Title IV-D license-suspension proceedings, we cannot conclude that appellants
would be unable to replead these claims to remedy the jurisdictional defect we have identified (i.e.,
to allege that the interagency contract is void). Consequently, while we affirm the district court's
judgment granting appellees' plea to the jurisdiction as to these claims, we reverse its judgment
dismissing the claims and remand the claims to the district court with orders to afford appellants a
reasonable opportunity to replead these claims, if possible, in a manner that affirmatively invokes
the district court's subject-matter jurisdiction. See City of Round Rock v. Whiteaker, 241 S.W.3d
609, 640 (Tex. App.--Austin 2007, pet. denied). By this, we are not suggesting that any repled
claim would necessarily survive future jurisdictional challenges by appellees. We conclude only
that the record does not demonstrate that this opportunity to replead would be futile. See Koseoglu,
233 S.W.3d at 839-40. We also emphasize that our holding is limited to the jurisdictional issue, as
presented on this record, and that we intend no comment on the ultimate merits of these claims.


 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

Filed: July 31, 2009
1. Where there has been a change in the interim, we have substituted the current officers. See
Tex. R. App. P. 7.2(a).
2. While this cause was pending in the district court, the Attorney General's office
amended its rules to designate "an administrative law judge, including an administrative law judge
of the State Office of Administrative Hearings," to conduct hearings and issue final orders in
Title IV-D license-suspension proceedings. 30 Tex. Reg. 7427 (2005). However, these subsequent
amendments do not apply here.
3. All three had their driver's licenses suspended by final orders of SOAH ALJs, acting under
color of chapter 232 and the interagency contract, following contested-case hearings. Talton's order
also suspended his barber's license.
4. Each of these plaintiffs acknowledged that their respective suspension orders had been
issued by default; i.e., they had not contested the merits before SOAH. See Tex. Fam. Code Ann.
§ 232.009 (West 2008) (where obligor defaults, "Title IV-D agency shall consider the allegations
of the [license suspension] petition to be admitted and shall render an order suspending the license
without the requirement of a hearing").
5. Although the Hon. Yelenosky rendered the order dismissing appellants' last remaining
claims, several other district judges made interlocutory rulings in the case. The Hon. Jenkins was
the judge who denied the first plea to the jurisdiction.
6. The Hon. Livingston presiding. 
7. In re Smith, No. 03-05-00226-CV (Tex. App.--Austin 2005, orig. proceeding
[mand. denied]). 
8. In re Smith, No. 05-0457 (Tex. 2005) (orig. proceeding).
9. In re Smith, No. 05-0457, 2005 Tex. LEXIS 808 (Tex. 2005) (orig. proceeding,
reh'g denied).
10. The file copy of this plea indicates that appellees served a copy on the now-pro se
plaintiffs rather than Jackson, as he had been disqualified.
11. This time, the Hon. Triana-Doyal presiding.
12. Judge Livingston, who had issued the disqualification order, also decided the motion
to revisit it.
13. As before, the file copy of the plea indicated that appellees served the pro se plaintiffs
directly and did not transmit a copy to Jackson.
14. This was Judge Yelenosky's order.
15. In re Samuel T. Jackson, No. 03-06-00209-CV (Tex. App.--Austin 2006,
orig. proceeding).
16. Smith v. Abbott, No. 03-06-00358-CV (Tex. App.--Austin 2007) (per curiam). 
17. Smith, No. 03-06-00358-CV, slip op. at 9. 
18. See Smith v. Abbott, No. 03-06-00358-CV (Tex. App.--Austin 2007) (per curiam). 
19. Appellants did complain in their "Motion to Reinstate Counsel" that "[t]he Court has
failed to state either in her order of disqualification or in her findings of fact and conclusions of law
any specific violation of the Texas Disciplinary Rules of Professional Conduct or of any other
unethical act warranting this Draconian remedy." However, appellants did not file this document
until December 1, 2005--over seven months after the original findings and conclusions were
filed--and did not request any "specified additional or amended findings or conclusions" as required
by rule 298.
20. Although appellants have previously been denied the same relief in mandamus
proceedings, these rulings were without comment on the merits and do not foreclose appellants
from raising this complaint on appeal. See Chambers v. O'Quinn, 242 S.W.3d 30, 32 (Tex. 2007).
21. During the hearing, the movants called Jackson to testify. Jackson admitted that when he
left the Division, he had taken with him copies of a password-protected database maintained within
the Division that he had obtained while working there. He further admitted that it was from these
copies of the database that he came to know of Smith, Hammond, Talton and Collins. Jackson
further indicated that he sent letters to each of these individuals soliciting their business.
22. There were, however, no findings that Jackson had begun representing appellants before
his official separation date of April 30, 2004, that appellants' license-suspension proceedings had
been on his docket, or that he had been substantially involved in those cases. 
23. We observe that the Division could have sought to vacate the order, but instead opted to
request a stay. See Tex. Fam. Code Ann. § 232.013 (West 2008).
24. See also Continental Cas. Ins. Co. v. Functional Restoration Assoc., 19 S.W.3d 393, 397
(Tex. 2000) (citing Stone v. Texas Liquor Control Bd., 417 S.W.2d 385, 385-86 (Tex. 1967)) ("It is
well recognized under Texas law that there is no right to judicial review of an administrative order
unless a statute provides a right or unless the order adversely affects a vested property right or
otherwise violates a constitutional right.").
25. Appellees have not contended that Smith's UDJA claims improperly seek a
remedy redundant of his suit for judicial review under APA 2001.171. See Strayhorn v. Raytheon
E-Systems, 101 S.W.3d 558, 572 (Tex. App.--Austin 2003, pet. denied); see also Texas Mun. Power
Agency v. Public Util. Comm'n, 100 S.W.3d 510, 517-20 (Tex. App.--Austin 2003, pet. denied)
(distinguishing between APA appeal of "a particular Commission order" and UDJA claim for "a
determination of the Commission's general authority" that would resolve larger underlying
controversy regarding its authority reflected in other agency proceedings).
26. Appellants do not appear to contend that Collins, Hammond, and Talton's allegations
regarding the "erroneous" calculation of interest on their child-support arrearages also
allege ultra vires acts (apart from their complaint that the Division rather than SOAH
should have heard and decided the matter). See North Alamo Water Supply Corp. v. Texas Dep't of
Health, 839 S.W.2d 455, 459 (Tex. App.--Austin 1992, writ denied) ("The fact that the [agency]
might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction
to make an initial decision."). Instead, appellants appear to be asserting these claims under
APA section 2001.171--and, again, they did not meet the statutory prerequisites to bring such
a claim. 
27. The Interagency Cooperation Act, Tex. Gov't Code Ann. §§ 771.001-.010 (West 2004
& Supp. 2008). 
28. The Uniform Grant and Contract Management Act, Tex. Gov't Code Ann. §§ 783.001-.010 (West 2004).
29. Appellants pled:


On January 8, 2004, under the authority of Tex. Fam. Code Ann. § 231.002(a)(4)
and (c), the OAG entered into an interagency contract with SOAH. The contract
purportedly delegated the OAG's authority to conduct contested case proceedings
in the Title IV-D license suspension cases to SOAH. Pursuant to the interagency
contract, SOAH has conducted administrative hearings in the Title IV-D cases
referred to it from the OAG's Child Support Division since May 1, 2004.
30. However, the SOAH order suspending Talton's driver's license, as noted, also suspended
his barber's license.